IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MAIER,

               Plaintiff,

   v.

POLICE OFFICER JOHN A. LEHMAN, et al.,

               Defendant.

CIVIL ACTION
NO. 13-6669

## OPINION

**Slomsky, J.**                                                **December 16, 2014**

## I.   INTRODUCTION

Pro se Plaintiff Michael Maier[1] brings this civil rights action under 42 U.S.C. § 1983

based on events arising out of a traffic stop by Police Officer John Lehnen on July 3, 2013.

Plaintiff also brings claims based on confinement she experienced at the Lehigh County Prison.

Plaintiff initiated this action by filing an application to proceed in forma pauperis on

November 14, 2013.  (Doc. No. 1.)  After the Court initially denied her application (Doc. No. 2),

the Court reconsidered and granted it on January 8, 2014.  (Doc. No. 4.)  On March 21, 2014,

Plaintiff filed her Complaint against The Honorable Maggie Snow, Officer Lehnen,[2] Lehigh

County Prison,[3] Dr. Ken Wloczewski—the head of the medical department at Lehigh County

---

[1]  Plaintiff underwent sexual reassignment surgery in 2000.  (Doc. No. 6, Ex. C.)  Therefore, the Court will address Plaintiff using female pronouns.

[2]  Plaintiff incorrectly spells Officer Lehnen's name as Officer "Lehman" in her Complaint. (Doc. No. 6.)

[3]  It is not clear from Plaintiff's Complaint whether she intended to include Lehigh County Prison as a Defendant or simply included Lehigh County Prison as the address of where another Defendant, Dr. Ken Wloczewski, is employed.  Regardless, Lehigh County Prison "is not a

Prison, PrimeCare Medical, Inc. ("PrimeCare Medical"),[4] and the Pennsylvania Department of Driver Licensing.  (Doc. No. 6.)

On July 16, 2013, Defendants PrimeCare Medical and Dr. Ken Wloczewski filed a Motion to Dismiss Plaintiff's Complaint.  (Doc. No. 20.)  On August 13, 2014, Defendant Officer Lehnen also filed a Motion to Dismiss.  (Doc. No. 25.)  On October 2, 2014, Plaintiff responded to both Motions to Dismiss.  (Doc. Nos. 27, 28.)  For reasons that follow, the Court will dismiss Plaintiff's Complaint in its entirety.

## II.    FACTUAL BACKGROUND

On July 3, 2013, Plaintiff was driving her personal freightliner truck through Pennsylvania when she was pulled over by Defendant Officer Lehnen.  (Doc. No. 6 at ¶ 9.)

---

person capable of being sued within the meaning of § 1983." <u>Lenhart v. Pennsylvania</u>, 528 F. App'x 111, 114 (3d Cir. 2013) (noting that plaintiff's claims against Westmoreland County Prison were properly dismissed because the prison was not a "person" who could be sued under Section 1983).  Therefore, the Court will dismiss any claims made against "Lehigh County Prison."

[4] To date, Plaintiff has not served the Complaint on PrimeCare Medical or Dr. Wloczewski. Plaintiff filed her Complaint on March 21, 2014 and the 120-day time period to serve Defendants as required under Federal Rule of Civil Procedure 4 has passed.  Under this Rule, the Court must dismiss Plaintiff's claims against the unserved Defendants without prejudice or order that service be made within a specified time.

Here, however, the unserved Defendants, PrimeCare Medical and Dr. Wloczewski, submitted a Motion to Dismiss Plaintiff's Complaint (Doc. No. 21), alleging that because Plaintiff failed to serve the Complaint on them and because Plaintiff's Complaint fails to state a claim for which relief can be granted, dismissal is warranted.

The Court will consider Defendants' Motion to Dismiss on the merits rather than dismiss Plaintiff's Complaint without prejudice or permit Plaintiff to complete service.  Because Defendants second argument is meritorious, there is no need to address the consequences for failing to timely serve the Complaint.

Officer Lehnen pulled her over because her "DOT numbers"[5] did not match—a fact Plaintiff admits in her Response to Defendant Lehnen's Motion to Dismiss.  (Doc. No. 6 at ¶ 9; Doc. No. 27 at 1.)  Officer Lehnen asked to see Plaintiff's medical card.[6]  (Id.)  Plaintiff explained to him that she was not required to carry one.  (Id.)  Nevertheless, Officer Lehnen issued Plaintiff a written warning for failing to carry a medical card and also for failing to carry an insurance card. (Doc. No. 25, Ex. A.)  The warning required Plaintiff to produce the medical card and proof of insurance within ten days.  (Id.)

After Officer Lehnen issued the warning, he discovered that there was an outstanding arrest warrant for Plaintiff in Lancaster County.  He then arrested Plaintiff at the scene of the stop based on the outstanding warrant.  (Doc. No. 6 at ¶ 11.)  Plaintiff submits that Officer Lehnen did not read Plaintiff her Miranda Rights during the course of the arrest.  (Id.) Apparently, she was released on bail, although the filings are silent on this point.

Ten days passed following the issuance of the warnings by Officer Lehnen, and Plaintiff did not produce the medical card or proof of insurance.  As a result, Officer Lehnen issued to Plaintiff two traffic citations on July 24, 2013.  (Doc. No. 25, Ex. B.)  The citations included a summons which notified Plaintiff she had ten days to respond.  (Doc. No. 6, Ex. B.)  The summons described the ways to respond as follows:

---

[5] The parties have not explained what "DOT numbers" are.  The Court will assume for the purpose of deciding the Motions that "DOT" stands for Department of Transportation and that "DOT numbers" reference a number assigned to commercial vehicles licensed in Pennsylvania.

[6] According to the Federal Motor Carrier Safety Administration website, "[a]ll commercial drivers of vehicles in interstate commerce with a maximum gross vehicle weight rating of over 10,000 pounds . . . are required to obtain and maintain a valid Medical Examiner's Certificate . . . ."  Medical Overview, Federal Motor Carrier Safety Administration, (Dec. 8, 2014), http://www.fmcsa.dot.gov/registration/commercial-drivers-license/medical.  The Medical Examiner Certificate is often referred to as a "medical card."  Id.

     1.    PLEAD NOT GUILTY by notifying the magisterial district judge above in writing and forwarding an amount equal to the total due specified above plus $8.00 if the offense charged is a motor vehicle offense as required by statute; or if the fine and costs are specified, forward the sum of $50.00 as collateral for your appearance at trial; **OR**,

     2.    PLEAD NOT GUILTY by appearing before the magisterial district judge above and posting such collateral for your appearance as the magisterial district judge shall require; **OR**,

     3.    If you cannot afford to pay the total due specified above or the $50.00 collateral, you must appear before the magisterial district judge above to enter a plea; **OR**,

     4.    PLEAD GUILTY by notifying the magisterial district judge above in writing, signing the appropriate plea under the MAIL IN PLEA section, and forwarding an amount equal to the total due specified above; **OR**

     5.    PLEAD GUILTY by appearing before the magisterial district judge above if the total due is not specified, or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, violation of 75 Pa.C.S. Section 1543(b) (Driving while operating privilege is suspended or revoked)

(Doc. No. 6, Ex. B.)

Plaintiff did not plead guilty or not guilty and pay the fine, nor did she appear in court as required. After failing to respond to the summons or appear in court, her license was suspended. (Doc. No. 25, Ex. C.) Plaintiff thereafter responded to the citation by pleading not guilty, and the suspension was removed. (Id.) A trial was scheduled and Plaintiff again failed to appear. (Id.) As a result, the court in her absence found Plaintiff guilty and imposed a fine on April 10, 2014. (Id.) When Plaintiff did not pay the fine, her license was suspended on May 17, 2014. (Id.)

In her Complaint, Plaintiff next describes her confinement at the Lehigh County Prison on October 8 and 9, 2013. (Doc. No. 6 at ¶¶ 9, 13.) It is unclear from the Complaint whether this detention was related to Officer Lehnen's arrest of Plaintiff in July 2013. Plaintiff states that while she was detained at Lehigh County Prison, she was not given her hormone medication or access to a daily orificial dilation treatment. (Id. at ¶¶ 13, 19.) Plaintiff requires these

maintenance treatments as a post-operative male-to-female transsexual.  (Id.; Doc. No. 6, Ex. C.)
Plaintiff alleges that she told unnamed staff members at Lehigh County Prison of her medical
needs, but she was not accommodated.  (Doc. No. 6 at ¶ 13.)  Because she was not given her
medication, Plaintiff contends that she "[l]anguish[ed] all day and thru [sic] the next morning."
(Id. at ¶ 13.)  She also suffered from dizziness and nausea and ultimately vomited while being
transported out of the prison.  (Id.)

Following the above events, Plaintiff filed a Complaint in this Court on March 21, 2014.
(Doc. No. 6.)  Plaintiff's claims are difficult to decipher but appear to arise under 42 U.S.C. §
1983.  They include: (1) a violation of Plaintiff's Fourteenth Amendment Due Process rights
committed by Officer Lehnen for issuing her a ticket and causing her license to be suspended for
failing to carry a medical card when she was not required to do so (Doc. No. 6 at ¶ 17); (2) a
violation of Plaintiff's Fifth Amendment rights by Officer Lehnen for failing to read Plaintiff her
Miranda Rights when she was arrested (Doc. No. 6 at ¶ 11); (3) a violation of Plaintiff's Eighth
Amendment rights by Dr. Wloczewski and PrimeCare Medical for failing to provide Plaintiff
with her medication while she was detained at Lehigh County Prison (Doc. No. 6 at ¶ 13); (4) a
violation of Plaintiff's Due Process rights by the Honorable Maggie Snow for "enforcing a
wrongfully issued ticket" (Doc. No. 6 at ¶ 12); (5) extortion by the Honorable Maggie Snow for
taking money from Plaintiff (Doc. No. 6 at ¶ 18); and (6) financial and emotional hardship
caused by the Pennsylvania Department of Transportation for wrongfully suspending Plaintiff's
driver's license (Doc. No. 6 at ¶ 15).

In an Order dated March 26, 2014, the Court dismissed the claims against Judge Snow
who is cloaked with judicial immunity.  (Doc. No. 7.)  In the same Order, the Court dismissed
the claims against the Pennsylvania Department of Transportation because it is an arm of the

Commonwealth of Pennsylvania and is therefore entitled to Eleventh Amendment immunity from Plaintiff's claims.  (Id.)  The claims that remain are the Fifth and Fourteenth Amendment claims against Officer Lehnen, and the Eighth Amendment Claim against Dr. Wloczewski and PrimeCare Medical.  For reasons that follow, the Court will dismiss the remaining claims against all Defendants. [7]

---

[7]  In deciding Defendants' Motion to Dismiss, the Court has considered the allegations in the Complaint, the exhibits attached to the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, (3d Cir. 2014) (stating that courts generally consider only the allegations in the complaint, exhibits attached to the complaint and matters of public record when analyzing a motion to dismiss).

The exhibits attached to the Complaint by Plaintiff include a summons to appear before Judge Snow related to Plaintiff's failure to carry a medical card (Doc. No. 6, Ex. A), the traffic ticket issued by Officer Lehnen that notes that Plaintiff "failed to respond to 10 day written warning" to produce the medical card (id.), a summons to appear before Jude Snow related to Plaintiff's failure to carry proof of insurance (Doc. No. 6, Ex. B), and the traffic ticket issued by Officer Lehnen after Plaintiff "failed to respond to 10 day written warning" to produce proof of insurance (id.)

The matter of public record the Court has considered is the Traffic Docket in Plaintiff's case before Judge Snow at Docket Numbers MJ-070301-TR0003064-2013, and MJ-070301-TR0003063-2013.

Finally, the Court has considered the written warnings that Officer Lehnen issued to Plaintiff that were included in Defendant Lehnen's Motion to Dismiss.  (Doc. No. 25, Ex. A.)  While these warnings were not part of Plaintiff's Complaint, a "document integral to or explicitly relied upon in a complaint may be considered without converting the motion to dismiss into one for summary judgment."  Schmidt, 770 F.3d at 249 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint."  Id. (quoting Watterson v. Page, 982 F.2d 1, 3-4 (1st Cir. 1993)).

Here, Plaintiff was given the warnings as a precursor to receiving the traffic citations that are at issue.  She had actual notice of the written warnings because they were handed to her on July 3, 2013 by Officer Lehnen.  The traffic citations Plaintiff did attach to the Complaint make reference to the warnings, noting that the citations were issued after Plaintiff "failed to respond to ten day written warning."  Absent the warnings and Plaintiff's failure to respond to them, Plaintiff would not have a cause of action against Officer Lehnen arising out of his issuance of the citations.  These documents are integral to the Complaint, and therefore, the Court has properly considered them.

III.     **STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set

forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements do not suffice" to

defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550

U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A.

France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals

Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third

Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a

complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth."  Finally,
> "where there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement for
> relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (citing <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u>

Where, as here, the complaint is filed pro se, the court must "read a pro se plaintiff's allegations liberally and apply a less stringent standard to the pleading of a pro se plaintiff than to a complaint drafted by counsel."  <u>McGrath v. Johnson</u>, 67 F.Supp.2d 499, 505 (E.D. Pa. 1999).  Nevertheless, even pro se plaintiffs must comply with the Rules of Civil Procedure when drafting a complaint.

## IV.    ANALYSIS

Plaintiff's claims against Defendants allege violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.  Section 1983 provides a cause of action against "every person who," under color of state law, "subjects, or causes to be subjected," another person to a deprivation of a federally protected right.  <u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 316 (3d Cir. 2014).  The claims remaining in Plaintiff's Complaint allege violations of Plaintiff's Fifth and Fourteenth Amendment rights by Officer Lehnen and violations of Plaintiff's Eighth Amendment rights by Dr. Wloczewski and PrimeCare Medical.  The Court will first address the claims against Defendant Lehnen and then the claims against Defendants PrimeCare Medical and Dr. Wloczewski.

### A.    Claims Against Officer Lehnen

8

### 1.     Fifth Amendment Violation

Plaintiff asserts that Officer Lehnen violated her Fifth Amendment rights.  The right protected under the Fifth Amendment relevant to Plaintiff's claims against Officer Lehnen is the right against self-incrimination.  <u>See</u> U.S. Const. amend. V ("No person shall . . . be compelled in any criminal case to be a witness against himself . . . .").  In order to protect individuals who are the subject of a custodial interrogation by the police against compulsory self-incrimination, the Supreme Court created the prophylactic Miranda warnings to "insure that the right against compulsory self-incrimination [is] protected."  <u>Michigan v. Tucker</u>, 417 U.S. 433, 444 (1974).

Violations of the Miranda warnings do not constitute violations of the Constitution itself. <u>Giuffre v. Bissell</u>, 31 F.3d 1241, 1256 (3d Cir. 1994).  The Miranda warnings act as a procedural safeguard, but not as a substantive right.  <u>Id.</u>  Therefore, Plaintiff cannot bring a claim under Section 1983 "merely for being questioned before being provided with Miranda warnings." <u>James v. York Cnty. Police Dep't.</u>, 160 F. App'x 126, 133 (3d Cir. 2005).

Plaintiff does not allege here that during the course of her arrest, Officer Lehnen interrogated her.  She also does not state that any statements she made were sought to be used against her.  Because Plaintiff cannot bring a Section 1983 claim based on Officer Lehnen's alleged failure to administer Miranda warnings, and because Plaintiff has not stated facts to suggest that the Miranda warnings were even necessary, Plaintiff's Fifth Amendment claim will be dismissed.

### 2.     Fourteenth Amendment Due Process Violation

Plaintiff's Due Process claims against Officer Lehnen arise from the traffic stop that occurred on July 3, 2014.  Specifically, Plaintiff claims that her due process rights were violated when Officer Lehnen issued Plaintiff a warning for failing to produce her medical card and an

insurance card during a traffic stop.  (See Doc. No. 6 at ¶ 17; Doc. No. 25, Ex. A.)  Plaintiff also

contends that her due process rights were violated when Officer Lehnen issued Plaintiff a traffic

citation for failing to produce these cards, and finally, for causing her license to be suspended

when Plaintiff did not respond to the citation.  (Doc. No. 25, Exs. A, B, C.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall

"deprive any person of life, liberty, or property, without due process of law."  The due process

clause applies to matters of procedure and substantive law.  Nicholas v. Pa. State Univ., 277 F.3d

133, 138 (3d Cir. 2000).  In her Complaint, Plaintiff does not state whether Officer Lehnen's

alleged Due Process violations were procedural or substantive in nature.  Therefore, the Court

will analyze Plaintiff's claims under the Fourteenth Amendment for both types of due process

violations.

### a.      Procedural Due Process

To state a claim under Section 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) she was deprived of an individual interest that is encompassed

within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the

procedures available to her did not provide "due process of law."  Alvin v. Suzuki, 227 F.3d 107,

116 (3d Cir. 2000).  Procedures that satisfy due process of law include "the right to advance

notice of significant deprivations of  . . . property and . . . a meaningful opportunity to be heard."

Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).

Here, Plaintiff was deprived of a property interest when her license was temporarily

suspended.  See Mackey v. Montrym, 443 U.S. 1, 19 (1979) ("[A] person's interest in [her]

driver's license is property that a state may not take away without satisfying the requirements of

the due process guarantee of the Fourteenth Amendment.")  However, the chronology of events

following the July 3, 2013 stop outlines the notices Plaintiff received and her opportunities to be heard, all of which provided her with the requisite procedural due process.

First, Plaintiff was issued a warning by Officer Lehnen and was given ten days to produce her medical card and proof of insurance.  (Doc. No. 25, Ex. A.)  When Plaintiff did not comply, Officer Lehnen issued a citation and a summons.  (Doc. No. 6, Exs. A, B.)  The summons gave Plaintiff the following ways to respond:

> 1.     PLEAD NOT GUILTY by notifying the magisterial district judge above in writing and forwarding an amount equal to the total due specified above plus $8.00 if the offense charged is a motor vehicle offense as required by statute; or if the fine and costs are specified, forward the sum of $50.00 as collateral for your appearance at trial; **OR,**
> 2.     PLEAD NOT GUILTY by appearing before the magisterial district judge above and posting such collateral for your appearance as the magisterial district judge shall require; **OR,**
> 3.     If you cannot afford to pay the total due specified above or the $50.00 collateral, you must appear before the magisterial district judge above to enter a plea; **OR,**
> 4.     PLEAD GUILTY by notifying the magisterial district judge above in writing, signing the appropriate plea under the MAIL IN PLEA section, and forwarding an amount equal to the total due specified above; **OR**
> 5.     PLEAD GUILTY by appearing before the magisterial district judge above if the total due is not specified, or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, violation of 75 Pa.C.S. Section 1543(b) (Driving while operating privilege is suspended or revoked)

(Doc. No. 6, Ex. B.)

Plaintiff did not respond with a plea of guilty or not guilty, nor did she appear in court as required.  (Doc. No. 25, Ex. C.)  After failing to respond to the summons or appear in court, her license was suspended.  (Id.)  When Plaintiff responded to the citation by pleading not guilty, the suspension was removed.  (Id.)  A trial was scheduled and Plaintiff again failed to appear.  (Id.)  As a result, the court imposed a fine on April 10, 2014 and found Plaintiff guilty.  (Id.)  When Plaintiff did not pay the fine, her license was suspended on May 17, 2014.  (Id.)

If Plaintiff wished to contest the warning and citation, she had an opportunity to be heard before Judge Snow or to respond to the traffic citation with a plea of "not guilty." Instead, Plaintiff ignored the summons and citation. Thus, Plaintiff's own inaction caused her license to be suspended—not any action taken by Officer Lehnen. Because Plaintiff was afforded ample notice of the charges and ample opportunity to be heard in court, her procedural due process rights were not violated. Thus, her procedural due process claim will be dismissed.

### b.    Substantive Due Process

Alternatively, "the substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." Boyanowski v. Capital Area Intermedia Unit, 215 F.3d 396, 399 (3d Cir. 2000). To establish a substantive due process violation, a plaintiff must prove that an interest at issue is protected by the substantive due process clause and that the government's deprivation of that interest was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Chainey v. Street, 523 F.3d 200, 221 (3d Cir. 2008). Whether the officer's action was conscience shocking is a threshold question. Lewis, 523 U.S. at 847 n.8.

The Third Circuit has identified three levels of conscience-shocking behavior: (1) deliberate indifference; (2) gross negligence or arbitrariness; and (3) intent to cause harm. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 241 (3d Cir. 2008). The intent to cause harm standard is applied where a state actor must use instant judgment, such as in a high-speed police chase. Lewis, 523 U.S. at 854. The gross negligence or arbitrariness standard is applied where a state actor must act quickly but has some time to deliberate. This standard was applied in a case

where a social worker had to quickly determine whether to separate a parent and a child.  <u>Miller v. City of Phila.</u>, 174 F.3d 368, 375-76 (3d Cir. 1999).  Where state actors "have the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience."  <u>Estate of Smith v. Marasco</u>, 430 F.3d 140, 153 (3d Cir. 2005).

Where as here, Officer Lehnen had the "luxury of proceeding in a deliberate fashion" when he pulled Plaintiff over, the Court will apply the deliberate indifference standard to his conduct.  Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 410 (1997).

Here, Plaintiff's Complaint is devoid of any allegation that Officer Lehnen acted with deliberate indifference.  Accepting the allegations in Plaintiff's Complaint as true, at most Officer Lehnen acted negligently if he incorrectly believed that Plaintiff had to carry a medical card.  However, mere negligence or mistake does not rise to the level of deliberate indifference. <u>See</u> <u>Little v. Lycoming Cnty.</u>, 912 F. Supp. 809, 815 (M.D. Pa. 1995) ("[T]he court[] will not intervene upon allegation of mere negligence [or] mistake," but only if the officer's actions rise to the level of deliberate indifference.)

Furthermore, Plaintiff was also issued a written warning for failing to carry an insurance card.  Plaintiff does not allege in her Complaint that this warning was improper—only the warning related to the medical card.  The subsequent citation and temporary suspension arose from Plaintiff's failure to respond to both warnings—not just the allegedly improper one.

Finally, the Court notes that Plaintiff was issued warnings, not traffic citations, on July 3, 2013.  These warnings alone demonstrate that Officer Lehnen was not seeking to deprive Plaintiff of a constitutionally protected right, but rather to alert her to the actions Officer Lehnen

would take should Plaintiff fail to produce proof in the form of these cards.  Plaintiff's failure to

respond to the warnings was the cause of the deprivation of her license.  Because Plaintiff has

failed to plausibly allege that Officer Lehnen's actions demonstrated deliberate indifference, her

substantive due process claim will be dismissed.[8]

      **B.**      **Eighth Amendment Claim Against PrimeCare Medical and Dr. Wloczewski**

           **1.**      **Claims Against Dr. Wloczewski**

The Court will next consider Plaintiff's Eighth Amendment claim against Dr.

Wloczewski.  The Eighth Amendment forbids cruel and unusual punishment.  U.S. Const.

amend. VIII.  The Supreme Court has interpreted this prohibition to require that prison officials

provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).

For an inmate to establish that adequate medical care was not given, the inmate must prove

(1) deliberate indifference on the part of the prison official; and (2) that the inmate's medical

need was serious.  Id. at 104.

In order for an inmate to show deliberate indifference under the Eighth Amendment

based on a violation that occurred in prison, the inmate must show that the prison official's act or

omission was "sufficiently serious" and "result[ed] in the denial of the minimal civilized

measures of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal

quotations and citations omitted).  Moreover, the inmate must establish that a prison official had

a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 296-97 (1991).  Where a

prison official inadvertently failed to provide adequate medical care, then the requisite culpable

state of mind has not been shown.  Id. at 297.

---

[8] The allegations in the Complaint also do not rise to the level of gross negligence or intent to
cause harm.  Even if the Court found that these standards applied here, the allegations still do
not show conscience-shocking behavior.

A medical need is "serious" where it is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Moreover, the need for care must be such that "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Tsakona v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009).

In her Complaint, Plaintiff contends that upon arrival at Lehigh County Prison on October 8, 2013, she notified an unnamed staff member that she needed her hormone medication and daily orifical dilation treatment. (Doc. No. 6 at ¶ 13.) Plaintiff states that her request went unfulfilled and she was allowed to "languish all day and thru [sic] the next morning" until becoming "very dizzy and nauseated." (Id.) Plaintiff alleges that while she was transported out of prison on the morning of October 9, 2013, she vomited. (Id.) Upon arrival at Lancaster County Prison, she was evaluated and treated. (Id.)

Given that the totality of the facts alleged in the Complaint, Plaintiff's claim fails for two reasons. First, Plaintiff names Dr. Ken Wloczewski as the Defendant in this claim. However, Plaintiff never states that she met with Dr. Wloczewski or that she told Dr. Wloczewski of her medical needs. "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Here, Plaintiff does not allege that Dr. Wloczewski had any personal involvement in Plaintiff's treatment. Plaintiff's Eighth Amendment claim would fail for this reason alone.

Second, Plaintiff's allegation of experiencing a serious medical need is insufficient to show deliberate indifference. She claims that she felt dizzy and nauseous and vomited while

being transported out of the prison.  Nausea and shakes are not "serious medical conditions" under the Eighth Amendment.  <u>Doty v. Cnty. of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994). Moreover, vomiting does not rise to the level of a "serious medical need."  <u>See Scales v. Bristol Va. City Jail</u>, No. 7:06-0556, 2007 WL 777532, at *5 (W.D. Va. March 13, 2007) (holding that "allegations of digestive upset, nausea, diarrhea, and vomiting are not sufficiently serious medical needs to rise to the level of an Eighth Amendment violation"); <u>Ross v. McGinnis</u>, No. 94-A-6742, 2004 WL 1125177, at *10 (W.D.N.Y. March 29, 2004) (finding that an inmate's complaints of abdominal pain, vomiting, constipation, and body heat did not constitute a serious medical need).

The Court recognizes that Plaintiff may have undergone a degree of discomfort when she did not receive her medication.  However, the dizziness, nausea, and vomiting she experienced does not amount to the "substantial and unnecessary suffering, injury, or death" required to establish a serious medical need.  <u>Tsakona</u>, 308 F. App'x at 632.  In fact, Plaintiff was treated the morning of October 9, 2013 when she arrived at a different prison and she does not allege to have suffered further.  (Doc. No. 6 at ¶ 13.)

Thus, the allegations in the Complaint do not allege that Dr. Wloczewski was deliberately indifferent or even aware of her medical request.  Moreover, her medical needs were not serious enough that a lay person would recognize they required immediate attention, or that a failure to treat her would result in substantial suffering.  For these reasons, the Court will also deny Plaintiff's Eighth Amendment Claim against Dr. Wloczewski.

### 2.    Claims Against PrimeCare Medical

In her Complaint, Plaintiff names PrimeCare Medical as a Defendant for violating Plaintiff's "civil rights in the same like manner as the Lehigh County Prison and its doctor."

16

(Doc. No. 6 at ¶ 14.)  PrimeCare Medical is a private company that provides medical services to various correctional facilities including Lehigh County Prison.  (Doc. No. 6 at ¶ 14.)  Under Section 1983, a private corporation that is "contracted by a prison to provide health care for inmates . . . can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."  Natale v. Camden Cnty., 318 F.3d 575, 583-84 (3d Cir. 2003).

As described above, Plaintiff's Complaint does not plausibly state that she suffered a serious medical need.  For this reason alone, Plaintiff's Eighth Amendment claim against PrimeCare Medical could be dismissed.  In addition, Plaintiff has failed to allege that PrimeCare Medical had a custom or policy exhibiting deliberate indifference towards inmates suffering serious medical needs.  As noted, the Complaint says only the following about PrimeCare Medical: "Prime Care [sic] Medical also plaintiff avers Violated [sic] plaintiff's civil rights in the same like manner as the Lehigh County Prison and its doctor did plaintiff avers."  (Doc. No. 6 at ¶ 14.)  The Complaint is devoid of any allegation that PrimeCare Medical either formally, or through a custom or policy, ignored the serious medical needs of Plaintiff.  Thus, Plaintiff's Eighth Amendment claim against PrimeCare Medical fails for this additional reason.

**V.    CONCLUSION**

For the foregoing reasons, the Defendants' Motions to Dismiss (Doc. Nos. 20, 25) will be granted and Plaintiff's Complaint (Doc. No. 6) will be dismissed in its entirety.  An appropriate Order follows.